**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAKHI WHITTAKER<br><br>   Plaintiff,<br><br>   v.<br><br>CHRISTIAN MUNOZ, in his individual capacity<br><br>   Defendant. | Civil Action No.: 1:17-cv-1983 |

**COMPLAINT & JURY DEMAND**

Plaintiff Makhi Whittaker, by and through his attorney, Coury Mascagni, Attorney at Law, respectfully alleges for his Complaint and Jury Demand as follows:

*We must not pretend that the countless people who are routinely targeted by police are "isolated." They are the canaries in the coal mine whose deaths, civil and literal, warn us that no one can breathe in this atmosphere. They are the ones who recognize that unlawful police stops corrode all our civil liberties and threaten all our lives. Until their voices matter too, our justice system will continue to be anything but.*

—*Utah v. Strieff*, 136 S. Ct. 2056, 2067 (2016) (Sotomayor, J., dissenting).

### I. INTRODUCTION

1. Returning home shortly after school had been let out, Makhi Whittaker, an eighteen-year-old African-American high school student with severe cognitive disabilities, boarded a Washington Metropolitan Area Transit Authority ("WMATA") bus outside of the Minnesota Avenue Metro Station with his girlfriend.

2. As scores of other students boarded the bus, the bus driver indicated to the students that they did not need to swipe their DC One Card—a card given to all high school students which allows them to take the bus for free.

3. Nevertheless, Mr. Whittaker and his girlfriend were removed from the bus and detained by Metro Transit Police Officer Defendant Christian Munoz for allegedly failing to pay their bus fare.

4. Despite having knowledge that Mr. Whittaker was instructed to board the bus without tendering payment, and therefore had committed no crime, Defendant Munoz placed Mr. Whittaker under arrest for failing to pay his bus fare.

5. As Defendant Munoz was placing handcuffs on Mr. Whittaker, Mr. Whittaker informed Defendant Munoz that he was abusing his authority as a police officer.

6. In retaliation for engaging in this constitutionally protected speech, Defendant Munoz further tightened Mr. Whittaker's handcuffs and deliberately ignored his pleas that they be loosened because they were causing him pain.

7. Mr. Whittaker was then transported to jail where he was detained until he was released, approximately twenty-four hours later, without having been charged with any crime.

8. As a result of this blatantly unconstitutional conduct, Mr. Whittaker has suffered significant physical and emotional injuries for which he now seeks redress.

## II. JURISDICTION AND VENUE

9. This action arises under the laws of the United States and is brought pursuant to 42 U.S.C. § 1983.

10. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

11. Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the events giving rise to the claims asserted in this Complaint occurred within Washington, D.C.

## III. PARTIES

13. At all times relevant to the subject matter of this litigation, Plaintiff Makhi Whittaker, an eighteen-year-old African-American male, has been a citizen of the United States and has been a resident of and domiciled in Washington, D.C.

14. At all times relevant to the subject matter of this litigation, Defendant Christian Munoz has been a citizen of the United States and domiciled in Washington, D.C., and was acting under color of state law in his capacity as a police officer employed by the Metro Transit Police Department.

## IV. FACTUAL BACKGROUND

15. On March 22, 2017, at approximately 3:30 p.m., a time where numerous high schools in the area were being let out for dismissal, Mr. Whittaker and his girlfriend Shelia Shelton boarded a WMATA bus outside of the Minnesota Avenue Metro Station with several other similarly aged students.

16. At the time, Mr. Whittaker, an eighteen-year-old African-American high school student with severe cognitive disabilities, was returning to his home in Washington D.C.'s 7th Ward—one of the poorest and most segregated neighborhoods in the City.

17. As students boarded bus, the bus driver instructed the students to simply take their seat without tendering payment.

18. This instruction was made in recognition that all students in the City are legally permitted to ride the bus for free.

19. In accordance with the bus driver's instructions, Mr. Whittaker and Ms. Shelton, like all of the other students, boarded the bus without tendering payment.

20. After Mr. Whittaker had boarded the bus, he was approached by Defendant Munoz, who at this time was not in uniform and had not identified himself as a police officer.

21. Defendant Munoz then asked Mr. Whittaker and Ms. Shelton for their DC One Card—the very card that allows students to ride the bus for free.

22. Upon information and belief, Defendant Munoz was aware that this card is issued to all high school students and that it allows them to ride the bus free of charge.

23. After Ms. Shelton presented her DC One Card, Mr. Whittaker wanted to know why Defendant Munoz had made this seemingly bizarre request.

24. Defendant Munoz then informed Mr. Whittaker that such request had been made because he and Ms. Shelton allegedly failed to pay their bus fare.

25. Mr. Whittaker responded by informing Defendant Munoz that he had failed to pay the fare at the request of the bus driver, who had instructed all of the students to board the bus without tendering payment.  Upon information and belief, Defendant Munoz had knowledge of these facts before he approached Mr. Whittaker.

26. After Mr. Whittaker presented his DC One Card, Defendant Munoz took the card from his possession and instructed both Mr. Whittaker and Ms. Shelton to exit the bus, an instruction that they immediately complied with.

27. Still unaware that Defendant Munoz was a police officer, and confused as to why he had demanded to inspect his DC One Card, Mr. Whittaker retrieved his card from Defendant Munoz who was loosely holding it out in his hand.

28. At this point, Defendant Munoz advanced towards Mr. Whittaker in a hostile manner, standing only inches away, and pointedly asked "you think you're tough?"

29. Frustrated by the events that were unfolding, Mr. Whittaker engaged in a hostile conversation with Defendant Munoz, whereby he made clear that he was opposing Defendant Munoz's unconstitutional conduct.

30. In retaliation for engaging in this protected activity, which occurred on a public sidewalk, Defendant Munoz abruptly began thoroughly searching Mr. Whittaker's person by in part, sticking his hands inside Mr. Whittaker's pockets.

31. Defendant Munoz conducted this search despite the fact that Mr. Whittaker was not under arrest and there was no probable cause or reasonable suspicion to believe that he had committed any crime.

32. Defendant Munoz then, for the very first time, announced that he was a Metro Transit Police Officer and proceeded to place Mr. Whittaker under arrest for allegedly failing to pay his bus fare.

33. Despite the fact that Mr. Whittaker and Ms. Shelton had both failed to tender payment at the request of the bus driver, only Mr. Whittaker was arrested for allegedly committing this offense.

34. As Defendant Munoz was placing handcuffs on Mr. Whittaker, and in protest of Defendant Munoz's decision to unlawfully arrest him, Mr. Whittaker informed Defendant Munoz, while still on the public sidewalk, that he was abusing his authority as a police officer.

35. In retaliation for voicing his opposition to Defendant Munoz's unconstitutional conduct, Defendant Munoz intentionally fastened the handcuffs too tightly around Mr. Whittaker's wrists causing him severe pain.

36. Soon thereafter, Mr. Whittaker informed Defendant Munoz that the handcuffs had been applied too tightly and requested that they be loosened.

37. Defendant Munoz responded by stating: "[the handcuffs] ain't too tight, I know how to put cuffs on" and by further tightening Mr. Whittaker's handcuffs so as to cause him additional pain.

38. The overly tight handcuffs were left on Mr. Whittaker, and were not adjusted or removed for another several hours, thereby causing his hands to swell for several days and which affected his ability to sleep.

39. After further tightening his handcuffs, Defendant Munoz proceeded to publically berate Mr. Whittaker for engaging in protected free speech, asking him "you don't think you're so tough now, huh?" and informing Ms. Shelton that she should "control [Mr. Whittaker's] mouth because he can't talk like that in jail."

40. In fact, at one point, Defendant Munoz explicitly told Ms. Shelton: "see if [Mr. Whittaker] would have just kept his mouth closed then he wouldn't be getting arrested."

41. Defendant Munoz's decision to arrest Mr. Whittaker, however, was contrary to Metro Transit Police Department's formal policy, which provides that Metro Transit Police Officers will issue violation *citations* to individuals who have failed to pay their bus fare.

42. After conducting an additional search of Mr. Whittaker's person, Mr. Whittaker was transported to the 6th District Police Station.

43. Once he arrived at the 6th District Police Station, Mr. Whittaker was placed in a holding cell for approximately six (6) hours, during which time no food or water were provided to him and he was not permitted to make any phone call.

44. Around 9:00 p.m., two officers came to Mr. Whittaker's cell and transported him to the Central Cell Block—a holding cell located in the basement of the D.C. Superior Courthouse.

45. When Mr. Whittaker arrived at Central Cell Block, he was placed in a roach infested two-person cell where he stayed until 9:00 a.m. the next morning, March 23, 2017, when he was brought to a different holding cell to meet with his public defender.

46. Mr. Whittaker was detained in this holding cell until 3:30 pm when he was released from jail without being charged with any crime or explanation for his detention.

47. Emotionally distraught about the events that had transpired over the last twenty-four (24) hours and scared to ride the bus, Mr. Whittaker had no other choice but to walk over six (6) miles from the Jail to his home, and which took Mr. Whittaker approximately two and a half hours.

48. Still severely impacted by this incident, Mr. Whittaker now largely avoids taking the bus, is fearful of police, and generally refuses to walk on Minnesota Avenue—all of which have significantly affected his daily life and have had a noticeable impact on his emotional well-being.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM
*42 U.S.C. § 1983—First Amendment Retaliation*
*Plaintiff Makhi Whittaker Against Defendant Munoz*

49. Plaintiff Makhi Whittaker incorporates by reference all of the preceding paragraphs as if fully set forth herein.

50. At all relevant times hereto, Defendant Munoz was acting under the color of state law in his capacity as a police officer employed by the Metro Transit Police Department.

51. Plaintiff's speech was conducted on a public sidewalk in Washington, D.C.

52. Opposing police officers who abuse their authority and violate the constitution is a matter of public concern and is protected by the freedom of speech clause of the First Amendment.

53. Plaintiff's speech did not violate any law.

54. Defendant Munoz knew or should have known that Plaintiff was not violating any law.

55. But for Defendant Munoz's retaliatory animus regarding Plaintiff's speech, he would have not arrested, searched, or applied excessive force to Plaintiff.

56. Defendant Munoz's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

57. Defendant Munoz's conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendant's position knew or should have known.

58. Defendant Munoz engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

59. As a direct and proximate result of Defendant Munoz's acts and/or omissions, Plaintiff has suffered significant injuries.

### SECOND CLAIM
*42 U.S.C. § 1983—Fourth Amendment (Unlawful Arrest)*
*Plaintiff Makhi Whittaker Against Defendant Munoz*

60. Plaintiff Makhi Whittaker incorporates by reference all of the preceding paragraphs as if fully set forth herein.

61. At all relevant times hereto, Defendant Munoz was acting under the color of state law in his capacity as a police officer employed by the Metro Transit Police Department.

62. The Fourth Amendment provides individuals with the right to be secure in their persons against unreasonable seizures.

63. The right of Plaintiff to be free from unreasonable seizures was clearly established at the time of the incident.

64. Any reasonable law enforcement officer in Defendant Munoz's position knew or should have known of this clearly established right.

65. Defendant Munoz seized Plaintiff when he detained and arrested him.

66. At no time did Defendant Munoz have reasonable suspicion, probable cause, or any other legal basis to believe that Plaintiff had committed, was committing, or was going to commit any crime, prior to seizing and continuing to restrain him.

67. Defendant Munoz had no warrant authorizing any such seizure of Plaintiff.

68. No legally recognizable exigent circumstances existed that would have justified or permitted Defendant Munoz's conduct.

69. Defendant Munoz's actions in arresting and otherwise seizing Plaintiff were objectively unreasonable in light of the circumstances confronting him.

70. Defendant Munoz engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

71. As a direct and proximate result of Defendant Munoz's acts and/or omissions, Plaintiff has suffered significant injuries.

### THIRD CLAIM
*42 U.S.C. § 1983—Fourth Amendment (Unlawful Search)*
*Plaintiff Makhi Whittaker Against Defendant Munoz*

72. Plaintiff Makhi Whittaker incorporates by reference all of the preceding paragraphs as if fully set forth herein.

73. At all relevant times hereto, Defendant Munoz was acting under the color of state law in his capacity as a police officer employed by the Metro Transit Police Department.

74. The Fourth Amendment provides individuals with a legitimate expectation of privacy in their bodies and property being free from unreasonable governmental searches.

75. The right of Plaintiff to be free from unreasonable searches was clearly established at the time of the alleged incident.

76. Any reasonable person in Defendant Munoz's position knew or should have known of this clearly established right.

77. Defendant Munoz had no warrant authorizing any search of Plaintiff or his property.

78. Defendant Munoz's decision to search Plaintiff was objectively unreasonable in light of the circumstances confronting him and in light of the fact that Defendant Munoz had no reasonable suspicion or probable cause to believe that Plaintiff had committed a crime, and had not yet placed him under arrest.

79. Defendant Munoz engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

80. As a direct and proximate result of Defendant Munoz's acts and/or omissions, Plaintiff has suffered significant injuries.

**FOURTH CLAIM**
*42 U.S.C. § 1983—Fourth Amendment (Excessive Force)*
*Plaintiff Makhi Whittaker Against Defendant Munoz*

81. Plaintiff Makhi Whittaker incorporates by reference all of the preceding paragraphs as if fully set forth herein.

82. At all relevant times hereto, Defendant Munoz was acting under the color of state law in his capacity as a police officer employed by the Metro Transit Police Department.

83. The Fourth Amendment to the United States Constitution prohibits police officers from using excessive force against other persons.

84. The force used by a police officer will be excessive unless the force that was used was objectively reasonable in light of the facts and circumstances presented at the time.

85. Overly tight handcuffing can constitute excessive force where the handcuffing has resulted in injury or where an individual complains about the overly-tight cuffing.

86. Defendant Munoz's decision to place overly tight handcuffs on Plaintiff and then further tighten them after Plaintiff had complained that they were causing him pain, was not objectively reasonable in light of the facts and circumstances presented at the time.

87. The right of Plaintiff to be free from the application of excessive force under the Fourth Amendment to the United States Constitution was clearly established at the time of the incident.

88. Any reasonable law enforcement officer in Defendant Munoz's position knew or should have known of this clearly established right.

89. Defendant Munoz engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

90. As a direct and proximate result of Defendant Munoz's act and/or omissions, Plaintiff has suffered significant injuries.

WHEREFORE, Plaintiff prays this Court:

    A.    Enter judgment in favor of Plaintiff and against Defendant;

    B.    Award Plaintiff compensatory damages against Defendant for his violation of Plaintiff's federally protected rights;

C.  Award Plaintiff punitive damages against Defendant for his reckless and/or callous indifference to Plaintiff's federally protected rights;

D.  Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of the law;

E.  Award pre- and post-judgment interest at the appropriate lawful rate; and

F.  Allow such other and further relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 26th day of September, 2017.

*/s/ Coury Mascagni*
Coury Mascagni
425 L Street NW
Apt 1223
Washington, DC, 20001-2869
202-340-8832
cmascagni@gmail.com

COUNSEL FOR PLAINTIFF