**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAKHI WHITTAKER

       Plaintiff,

       v.                     Civ. No. 17-1983 (EGS)

CHRISTIAN MUNOZ, in his
Individual capacity

       Defendant.

<u>**MEMORANDUM OPINION**</u>

Plaintiff Makhi Whittaker brings this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights when defendant Christian Munoz, an MPD Officer, allegedly arrested Mr. Whittaker without probable cause in violation of the Fourth Amendment. Mr. Whittaker also alleges that Officer Munoz violated his First Amendment rights by arresting him in retaliation for his speech. Officer Munoz moves for summary judgment arguing that Mr. Whittaker fails to show a violation of the Constitution, and, alternatively, even if there was a violation, qualified immunity precludes this lawsuit. Upon consideration of Officer Munoz's motion for summary judgment, the response and reply thereto, the applicable law, and the entire record, the Court will **GRANT** Officer Munoz's motion for summary judgment.

## I. Background[1]

Mr. Makhi Whittaker, a high school student, was arrested after boarding a metrobus on the afternoon of March 22, 2017. *See* Statement of Undisputed Facts ("SOF"), ECF No. 19-1 at 23.[2] Mr. Whittaker was not in school that day because he had a doctor's appointment. *Id.* Mr. Whittaker and his girlfriend, Sheila Shelton, began the day by going to Ms. Shelton's home to visit her family. *Id.* They left Ms. Shelton's home in the afternoon, at which point they had plans to go to the Northeast section of the city so Mr. Whittaker could sell a videogame at a local store. *Id.* at 23–24.

To get to Northeast, Mr. Whittaker and Ms. Shelton attempted to catch a metrobus at the Minnesota Avenue Metro Station. *Id.* at 24. Once the metrobus arrived, Mr. Whittaker and Ms. Shelton entered the metrobus along with other schoolchildren, some in uniform and some not. *Id.* Mr. Whittaker was not in uniform that day because he did not go to school. *Id.* Mr. Whittaker and Ms. Shelton did not pay the bus fare and did not show the bus driver a "D.C. One Card" which allows students in the District of Columbia to ride the metrobus for free if they are going to or from school, or a school-related activity.

---

[1] Unless otherwise noted, the following facts are undisputed.
[2] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number not the page number of the filed document.

*Id.* Mr. Whittaker was waived onto the bus by the driver as the driver was letting other students onto the bus.[3] Mr. Whittaker went on the bus without paying a fare, and he and Ms. Shelton boarded the bus. *Id.* at 25.

Meanwhile, Officer Munoz, an MPD Officer, was patrolling the Minnesota Avenue Metro Station, an area that has had problems in the past with fare evasion. *Id.* at 24. He was patrolling the station when Mr. Whittaker and Ms. Shelton arrived. *Id.* at 24. Officer Munoz observed Mr. Whittaker enter the bus without paying the fare and without displaying a D.C. One Card. *Id.* at 25. Officer Munoz ordered them both to exit the metrobus and arrested Mr. Whittaker for fare evasion by placing him in handcuffs. *Id.* The parties disagree about what Mr. Whittaker said to Officer Munoz and when; however the parties do agree that Mr. Whittaker asked why he was being put in handcuffs and also asked Officer Munoz to explain what probable cause he had to arrest him. *Id.* at 26. Officer Munoz searched Mr. Whittaker incident to the arrest. *Id.* Mr. Whittaker was released the next day and was not charged with a crime. Compl., ECF No. 1 ¶ 46.

---

[3] The parties dispute whether the bus driver waived any passengers on to the bus. This disputed fact, however, is not material.

Thereafter, Mr. Whittaker filed this lawsuit alleging violations of the First and Fourth Amendments and seeking compensation pursuant to 42 U.S.C. § 1983. *See generally id.* After a short discovery period, Officer Munoz moved for summary judgment against all claims. Def.'s Mot., ECF No. 17. Mr. Whittaker filed his opposition, ECF No. 19, and Officer Munoz has filed a reply, ECF No. 22. This motion is ripe for disposition.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(internal quotation marks omitted).

Once the moving party has met its burden, the non-moving party must come forward with specific facts that would present a genuine issue for trial. M*atsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine dispute exists

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any inferences drawn on the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. A party asserting that a fact is "genuinely disputed" must support that assertion by "citing to particular parts of materials in the record" or "showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "If a party ... fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e); *see also* Local Civ. R. 7(h).

## III. Analysis

Mr. Whittaker has sued Officer Munoz under Section 1983 alleging several violations of his constitutional rights. *See generally*, Compl., ECF No. 1. Specifically, he alleges violations of the Fourth Amendment right to be free from unreasonable search and seizure[4]; and the First Amendment's

---

[4] Mr. Whittaker also initially brought a claim for violation of the Fourth Amendment's prohibition against the use of excessive force. Compl., ECF No. 1 at 10-11. However, he has conceded that "his claim for excessive force must fail and that summary judgment should be granted to Defendant Munoz with respect to such claim." Pl.'s Opp'n, ECF No. 19-1 at 5 n.1. The Court agrees, Mr. Whittaker has failed to provide support for his allegation that he suffered an injury from the use of force, and

prohibition against retaliatory arrest. *Id.* at 7–10. Officer Munoz alleges that both claims fail because he had probable cause to arrest Mr. Whittaker. *See generally* Def.'s Mot., ECF No. 17.

Mr. Whittaker does not dispute the fact that his claims fail if Officer Munoz had probable cause to arrest him; nor can he. An arrest supported by probable cause does not violate the Fourth Amendment's prohibition against unreasonable search and seizure. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). As for the First Amendment claim, at the time of Mr. Whittaker's arrest, the Supreme Court had held that it "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Reichle v. Howards*, 566 U.S. 658, 664–65 (2012). The Court recently addressed this issue in *Nieves v. Bartlett*, in which it held that, generally, a First Amendment retaliatory arrest claim fails as a matter of law when an officer has probable cause to arrest.[5] 139 S.Ct. 1715, 1726 (2019). Accordingly, if this Court

---

therefore his excessive force claim fails as a matter of law. *See Garay v. Liriano*, 943 F. Supp. 2d 1, 19 (D.D.C).

[5] The Supreme Court identified one circumstance when probable cause to arrest may not defeat a claim for retaliatory arrest

finds that Officer Munoz had probable cause to arrest Mr.
Whittaker, both the Fourth and First Amendment claims fail as a
matter of law. The Court discusses each claim in turn.

**A. Fourth Amendment Claim: Unlawful Search and Arrest**

An arrest is supported by probable cause "when known facts
and circumstances are sufficient to warrant [an officer] of
reasonable prudence in the belief that an offense has been or is
being committed." *United States v. Davis*, 458 F.2d 819, 821
(D.C. Cir. 1972). The existence of probable cause thus turns on
objective considerations, rather than the actual mental state of
the arresting officer. *See, e.g., United States v. Jackson*, 415
F.3d 88, 91 (D.C. Cir. 2005). The probable cause standard does
"not demand any showing that such a belief be correct or more
likely true than false." *Texas v. Brown*, 460 U.S. 730, 742
(1983). "To determine whether [an officer] had probable cause to
believe that [a plaintiff was] violating District of Columbia
law, we look to District law to identify the elements of each of
those offenses." *McGovern v. George Washington University*, 245
F. Supp. 3d 167 (D.D.C. 2017)(citation and internal quotation
marks omitted).

---

under the First Amendment. This circumstance is where officers
have probable cause to make arrests, "but typically exercise
their discretion not to do so." *Nieves*, 139 S.Ct. at 1727.

Based on the undisputed facts in this case, the Court is satisfied that Officer Munoz had probable cause to arrest Mr. Whittaker. Under District of Columbia law, it is a crime to ride the metrobus without paying a fare. D.C. CODE § 35-216. The relevant provision of the D.C. Code states as follows: "[n]o person shall . . . knowingly board a public or private passenger vehicle for hire, including vehicles owned and/or operated by the Washington Metropolitan Area Transit Authority . . . without paying the established fare or presenting a valid transfer for transportation on such public passenger vehicle." *Id.*[6] Although students are not charged a fare when taking an eligible bus trip, a student is expressly prohibited from using "his or her Student Rider Card . . . for trips that are not eligible for a student trip." 18 DCMR § 1799.1. Absent an eligible trip, a student must pay full bus fare in the District of Columbia.

It is undisputed that Mr. Whittaker was not in his school uniform, and was not going to school or engaged in a school-related activity. *See* SOF, ECF No. 19-1 at 23-24. It is also undisputed that when he entered the metrobus, he did not pay the bus fare, nor did he show his D.C. One Card. *Id.* at 25. Accordingly, the probable-cause question boils down to whether

---

[6] A violation of § 35-216 is "punishable by a fine of not more than $300, by imprisonment for not more than 10 days or both." D.C. CODE § 35-253.

it was reasonably prudent for Officer Munoz to conclude that Mr. Whittaker was committing the crime of fare evasion. Under these circumstances, faced with the fact that he was in an area known for fare evasion, he observed a person who was not in a school uniform enter a bus and not pay a fare or present a D.C. One Card, the Court concludes that Officer Munoz had a reasonable belief that the offense of fare evasion was being committed. Therefore, Mr. Munoz had probable cause to make the arrest.

Mr. Whittaker makes several arguments for why Officer Munoz's actions were not supported by probable cause, but each are foreclosed by precedent. He first argues that there was no evidence that he knowingly violated the intent requirement of the fare-evasion statute because he was waived onto the metrobus by the bus driver. *See* Pl.'s Opp'n, ECF No. 19-1 at 11–13. Mr. Whittaker is correct that when specific intent is an element of a crime, an officer needs to have some evidence of the arrestee's intent to violate the law. *See U.S. v. Christian*, 187 F.3d 663, 667 (D.C. Cir. 1999). In *Christian*, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") held an Officer did not have probable cause to arrest a man who only possessed a dagger when the law prohibited possession of the weapon with intent to use it unlawfully against another. *Id.* Because there was no evidence witnessed by the arresting officer, direct or circumstantial, that showed that the arrestee

intended to use the dagger unlawfully, the Court held the officer lacked probable cause to arrest him. *Id.*

The problem for Mr. Whittaker, however, is that fare evasion is not a specific-intent crime, but rather a general intent crime. *See Tillman v. WMATA*, 695 A.2d 94, 96 (D.C. 1997)(stating officer had probable cause to arrest a person for failure to pay fare even if the failure to pay "may have been an inadvertent product of . . . confusion concerning the absence of the usual gate"). Consequently, the requisite intent required to violate the statute is the general intent to commit the act that constitutes the crime, not intent to violate the law itself. *See Dauphine v. U.S.*, 73 A.3d 1029, 1032 (D.C. 2013)(explaining standard for general intent). Based on the facts in this case, Mr. Whittaker's actions of boarding the bus without paying the fare was sufficient evidence for Officer Munoz to believe the crime of fare evasion occurred in his presence.

Mr. Whittaker also argues that because the bus driver waived him onto the metrobus, Mr. Whittaker's failure to pay the fare or show his D.C. One Card was not unlawful. Pl.'s Opp'n, ECF No. 19-1 at 12–13. Even if this is true, Officer Munoz has testified that he did not see the bus driver waive Mr. Whittaker onto the bus and that he understood that bus drivers do not have the authority to allow patrons to ride WMATA's metrobuses for free. Def.'s Reply, ECF No. 22 at 11 (citing Munoz Deposition,

ECF No. 17-3 at 57:18–59:3). Even if Mr. Whittaker was mistaken as to both assumptions, and it is not clear that he was, the Supreme Court has held that the Fourth Amendment is not violated when an Officer seizes someone but makes a reasonable mistake of fact or law. *See Hein v. North Carolina*, 135 S.Ct. 530, 539 (2014). The Court holds that, assuming there was a mistake of fact or law in this case, it was reasonable, and therefore there was no violation of the Fourth Amendment as a matter of law. *See Herring v. United States*, 555 U.S. 135, 139 (2009)(assuming a Fourth Amendment violation, but noting that "[w]hen a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation"). Accordingly, the Court **GRANTS** Officer Munoz summary judgment on the unlawful arrest claim.[7]

## B. First Amendment Claim: Retaliatory Arrest

When an arrest is supported by probable cause, a First Amendment retaliatory arrest claim will generally fail as a matter of law. *Nieves*, 139 S.Ct. at 1726 (stating that probable cause for an arrest will typically defeat a retaliatory arrest

---

[7] Mr. Whittaker agrees that if the arrest was lawful then the search incident to arrest could not have violated the Fourth Amendment. *See* Pl.'s Opp'n, ECF No. 19-1 at 16. Therefore the Court **GRANTS** Officer Munoz's motion for summary judgment related to the allegation of unreasonable search.

claim). However, in *Nieves* the Supreme Court identified one circumstance under which probable cause may not defeat a claim for retaliatory arrest under the First Amendment. *Id.* at 1727. This circumstance is "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* In other words, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* As the Court explained, "[i]n such cases, an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'" *Id.* (citation omitted). The parties understandably did not brief this issue, and it appears that they did not take evidence on this issue in discovery, because the *Nieves* case was not decided prior to the close of discovery in this case. Although this Court would typically order supplemental briefing in such a circumstance, the Court need not follow that course in this case because qualified immunity disposes this claim.

The doctrine of qualified immunity entitles officers to immunity from suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

U.S. 223, 231 (2009)(citation and internal quotation marks omitted). A right is clearly established at the time of an alleged violation if it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001)(citation omitted). If the right in question was not clearly established, a court need not "broach the question of whether a constitutional violation occurred because the officers are entitled to qualified immunity regardless." *Dukore v. District of Columbia*, 799 F.3d 1137, 1144 (D.C. Cir. 2015)(citing *Pearson*, 555 U.S. at 236).

In reviewing a grant of qualified immunity, a Court must consider the right asserted "not as a broad general proposition, but in a particularized sense so that the contours of the right are clear[.]" *Reichle*, 566 U.S. at 665 (internal citations and quotation marks omitted). The right that must be consider in this case is "not the general right to be free from retaliation for one's speech," but rather "the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id.*

In March 2017, the time of the arrest in this case, the precedent in this Circuit was inconclusive on the question of whether an arrest supported by probable cause could violate the First Amendment's protection against retaliatory arrests. *See*

13

*Nieves*, 139 S.Ct. at 1728 (explaining that the Court took up the question in 2018, but "ultimately left the question unanswered").[8] And courts had not spoken on the issue of whether an officer who has probable cause to make an arrest, but would typically exercise his or her discretion not to, will violate the First Amendment if he or she arrests someone who engages in protected speech. Since there was no consensus view at the time of the actions in this case, even if there was a First Amendment violation for retaliatory arrest notwithstanding the fact Officer Munoz had probable cause to arrest Mr. Whittaker, Officer Munoz is entitled to qualified immunity.[9] Therefore, the Court **GRANTS** Officer Munoz's motion for summary judgment on the First Amendment retaliatory arrest claim.

## IV. Conclusion

For the foregoing reasons Officer Munoz's motion for summary judgment is **GRANTED.** An appropriate Order accompanies this Memorandum Opinion.

---

[8] The D.C. Circuit, in 2015, explicitly stated that the question was inconclusive in 2011. *Dukore*, 799 F.3d at 1145. Mr. Whittaker has not identified, and this Court has not found, any precedent that shows that the right was clearly established as of 2017.

[9] The Court notes that, as of May 28, 2019, it is clearly established that probable cause may not defeat a claim for retaliatory arrest when an officer arrests and individual who engages in protected speech but chooses not to arrest otherwise similarly situated individuals not engaged in the same type of protected speech. *See Nieves*, 139 S.Ct. at 1728.

SO ORDERED.

Signed:    Emmet G. Sullivan
           United States District Judge
           September 4, 2019